UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| DANIEL RODRIGUEZ, | : | |
| Petitioner, | : | **REPORT AND RECOMMENDATION** |
| - against - | : | |
| CYRUS VANCE, JR., District Attorney, New York County[1], | : | **12-CV-5418 (LAP) (RLE)** |
| Respondent. | : | |

To the HONORABLE LORETTA A. PRESKA, U.S.D.J.:

## I.  INTRODUCTION

*Pro Se* Petitioner Daniel Rodriguez ("Rodriguez"), a New York state prisoner at Green

Haven Correctional Facility, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  A jury

convicted Rodriguez of murder in the second degree (N.Y. PENAL LAW § 125.25[3]), robbery in

the first and second degrees (N.Y. PENAL LAW §§ 160.15[4], 160.10[1]), and criminal possession

of a weapon in the second and third degrees (N.Y. PENAL LAW §§ 265.03[1][b], 265.02[4]).

Rodriguez was sentenced to concurrent prison terms of fifteen years to life for murder in the

second degree, ten years for robbery in the first degree, eight years for robbery in the second

degree, eight years for criminal possession of a weapon in the second degree, and five years for

criminal possession of a weapon in the third degree.  Rodriguez was also convicted, after a plea

of guilty, to criminal possession of a controlled substance in the third degree (N.Y. PENAL LAW §

220.16).  Rodriguez argues in his Petition that his incarceration violates the United States

---

[1] Although the petitioner improperly named the District Attorney instead of the Superintendent of Green Haven Correctional Facility as the respondent in this case, this mistake does not change the legal issues herein.

Constitution because: (1) the State deprived him of his due process rights by having witnesses present "patently tailored testimony" against him; (2) the trial court erred in admitting evidence that was obtained in violation of his Fourth and Fourteenth Amendment rights; (3) the trial court violated his due process rights by failing to instruct the jury on the defense of justification, and failing to instruct the jury with a "vicarious justification" charge;[2] (4) the trial court erred in denying Rodriguez's motion to set aside the verdict where, on *voir dire*, a juror failed to disclose her past association with the New York County District Attorney's office and, at a disqualification hearing, expressed personal feelings for the trial assistant; (5) the trial court erred in failing to conduct a probing inquiry of a juror who expressed dissatisfaction with trial procedure; (6) the trial court violated his due process rights by failing to instruct the jury that certain evidence applied only against his co-defendant and not against him; (7) the trial court mistakenly imposed a three-year determinate sentence of imprisonment for Rodriguez's conviction for criminal possession of a controlled substance when it had promised him a one-year determinate sentence;[1] and (8) his attorney was ineffective (a) in failing to request a justification charge, (b) in failing to move to discharge the allegedly dissatisfied juror, and (c) in not requesting a limiting instruction with regard to evidence presented against the co-defendant. (Pet'r's Pet. For Writ of Habeas Corpus ("Pet.") ¶¶ 1-7.)  For the reasons set forth below, I recommend that the Petition be **DENIED**.

---

[2] Rodriguez's argument that the court failed to instruct the jury with a "vicarious justification" charge is substantially the same as his argument that the court failed to instruct the jury on the defense of justification. Accordingly, the Court will address both arguments together.

[1] Rodriguez raised this claim on his direct appeal and the Appellate Division granted the relief sought.  *People v. Rodriguez*, 922 N.Y.S.2d 384 (1st Dep't 2011).  Therefore, the claim is moot and the Court will not review it here.

## II.   BACKGROUND

### A.   Factual Background

#### 1.   The Crime and the Investigation

On September 25, 2006, Rodriguez agreed with Dennis Almonte, Jo-Jo Almonte, and Joel Guzman to rob known drug dealer Miguel "Shorty" Peralta.  (Hr'g 186-87, May 14, 2007.) Guzman hired Mamadou Diallo, a livery cab driver, to drive them to where the robbery was to take place.  (*Id.* at 78-81.)  Before the robbery, the group asked Diallo to drive them to Dennis Almonte's house, where the Almonte brothers each picked up a .380 caliber gun.  (Trial Tr. ("Tr.") 126-27, July 10, 2007.)  Diallo drove Rodriguez, the Almontes, and Guzman to West 147th Street in Manhattan.  (*Id.* at 129.)  On their way there, the group devised a plan to rob Peralta by first pretending to buy 150 grams of cocaine from him.  (*Id.*)  Rodriguez would then take the drugs from Peralta and punch him in the face.  (*Id.* at 12.)  Dennis Almonte would hold Peralta down by threatening him with his gun.  (*Id.*)

Meanwhile, at about 11:00 p.m., Josephine Reynoso was in the vicinity of West 147th Street and Broadway, where she ran into Peralta, with whom she was friendly.  (*Id.* at 39-41.) Peralta told her that they could share a cab if she waited a few minutes, as he just needed to meet with his "cousins" who were already on their way there.  (*Id.*)  Soon thereafter, Diallo's cab pulled up, and Peralta leaned in the front passenger window and said, "[W]hoever got the money, come on."  (*Id.* at 424.)  Rodriguez and Dennis Almonte got out of the car and walked with Peralta to a building at 3609 Broadway, where they met Peralta's drug supplier, Leonardo Hernandez.  (*Id.* at 426, 339-40.)

Inside the building, Peralta and Hernandez went to the third floor, where Peralta told Hernandez to mix 125 grams of cocaine with 25 grams of baking soda.  (*Id.* at 349-50.)

3

Hernandez then proceeded to the seventh floor, where he went into an apartment to mix the cocaine with baking soda. (*Id.*) Hernandez returned to an apartment on the second floor, where he gave the altered cocaine to Peralta. (*Id.*) Both Hernandez and Peralta walked to the landing of the second floor, where Rodriguez was waiting at the top of the stairs, with Almonte standing about "five or six" steps behind Rodriguez and down the stairwell. (*Id.*) Peralta then gave the cocaine to Rodriguez, who tried it with his tongue. (*Id.* at 351.) Rodriguez said the cocaine was "good" and Almonte then told him to go ahead and pay Peralta for it. (*Id.*)

Instead of paying Peralta, Rodriguez punched him. (*Id.*) Hernandez immediately reacted by jumping on Rodriguez. (*Id.* at 352.) Peralta stumbled a few steps, recovered from the punch, and jumped on Almonte. (*Id.* at 373.) Suddenly, they "heard a shot" and Hernandez saw Almonte holding a gun. (*Id.* at 384-85.) Peralta fell to the floor, dead of a gunshot wound, while Hernandez "ran upstairs." (*Id.* at 373-74.)

Rodriguez and Almonte ran out of the building and into Diallo's cab and drove off. (*Id.* at 131.) Next, the men drove to East 124th Street and Second Avenue, to the Almontes' aunt's house, where the group divided the stolen cocaine. (*Id.* at 132-33.)

On September 26, at about 2:30 a.m., Detective Anthony D'Amato ("D'Amato) arrived at 3609 Broadway. (*Id.* at 78.) He recovered a discharged .380 caliber shell casing at the bottom of the stairwell that leads from the lobby to the second floor. (*Id.* at 70.) On September 27, at about 10:30 p.m., Detectives Vieni and Bonas went to 3210 Perry Avenue in the Bronx to look for Guzman. (*Id.* at 208-09.) Guzman testified that he and Rodriguez were "smoking in the hallway" as the detectives entered the building. (Tr. 141.) As the detectives approached, Guzman ran into apartment 4F. (Hr'g at 15.) As the detectives started making their way up to the fourth floor, Vieni smelled marijuana. (*Id. at* 14.) When they reached the fourth floor

4

landing, they spotted Rodriguez sitting on the stairs, wearing a baseball cap and rolling a marijuana "blunt." (*Id.* at 15.)

When questioned by Detective Vieni, Rodriguez stated that he was "waiting for [his] boy." (*Id.* at 15.) Vieni went into the apartment and found Guzman hiding. (*Id.* at 17-18.) Rodriguez admitted to Bonas that he had marijuana. (*Id.* at 54.) The detectives arrested both Guzman and Rodriguez and took them to the 30th Precinct station. (*Id.* at 56.) There, Rodriguez handed his shoe to Detective DeLeon as part of a search, and the detectives recovered 18 bags of crack cocaine. (*Id.* at 57.)

On September 28, 2006, Detective Orlando Rios arrested Dennis Almonte at 320 East 13th Street in Manhattan. (Tr. 256-60.) The following day, Hernandez viewed lineups and identified both Dennis Almonte and Rodriguez as the parties who had robbed and killed Peralta. (*Id.* at 287-88.)

Also on September 28, Detective Samuel Perez searched an apartment at 2400 Second Avenue in Manhattan. (*Id.* at 307.) He found an identification card belonging to Dennis Almonte, mail addressed to Christian and Raquel Almonte, two scales, "Ziplock" baggies and their "ties," a bag with ammunition and "a couple" of loose nine millimeter rounds, a "very small spoon," and "glassine envelopes." (*Id.* at 309-22.)

### 2.     The Trial and Motion to Set Aside the Verdict

During jury selection, Juror S. asked whether the jury could ask questions of the defendants. (*Id.* at 208-09.) The judge instructed the jury to not ask questions of the defendants. (*Id.*) In response, the juror stated that she thought that it was a bad system because it would present a problem if they could not hear something. (*Id.*) The judge told the jurors that if they

5

could not hear something, the testimony would be read back to them upon request. (*Id.* at 210.) Consequently, the juror had no more questions.

Rodriguez presented no direct case at trial and relied on his co-defendant's case. At trial, the defense tried to argue that Rodriguez, Guzman, and the Almonte brothers went to Peralta to rob him. (*Id.* at 507.) Furthermore, the defense argued that Peralta tried to cheat Rodriguez and Almonte by giving them cocaine diluted with baking soda. (*Id.* 506-07.) The defendants argued that this was a case of a drug deal that went bad. (*Id.* at 518.) Therefore, the defendants argued, the jury should not convict them of felony murder or intentional murder as the State had requested. (*Id.* at 511-12.)

The jury found both defendants guilty of the charges, including murder, on July 19, 2007. On October 9, 2007, the court sentenced Rodriguez to fifteen years in prison and Almonte to seventeen and one-half years in prison.

On July 19, 2007, Juror D. left a voicemail message for ADA Evan Krutoy, who had tried the case for the prosecution. (Resp. Brief on Appellate Review 58.) Juror D. identified herself as a juror on the case and expressed interest in working for the District Attorney's Office. (*Id.*) Juror D. also stated in the message that she had interned for the District Attorney's Office, a fact that she had not disclosed during *voir dire*. The prosecution informed the court of the message, confirmed that Juror D. had been an intern for the District Attorney's Office in 1997, and that she had applied for a position in 1999, but had then withdrawn her application. (*Id.* at 58-59.) The defense moved to set aside the verdict. (*Id.*) On September 18, 2007, the court held a hearing in which Juror D. was questioned by the judge and the defense. (*Id.* at 59) Juror D. stated that she had not known ADA Krutoy during her internship and that she had not reported the internship during *voir dire* because it had occurred long before trial. (*Id.*) She also stated

6

that she did not think the internship had influenced her participation as a juror in any way. (*Id.*)
She further explained that she had contacted ADA Krutoy about working in the District
Attorney' Office as a pretext because she thought "he was a nice guy" and wanted to find out his
"personal circumstances" and "availability for coffee." (*Id.* at 60.)  The court denied the motion
to set aside the verdict on October 9, 2007.

**B.      Procedural Background**

Rodriguez appealed his conviction and raised four claims through his assigned counsel:
(1) the trial court erred in admitting evidence that was obtained in violation of Rodriguez's
Fourth and Fourteenth Amendment rights; (2) the trial court erred in denying Rodriguez's
motion to set aside the verdict where, on *voir dire*, a juror failed to disclose her past association
with the New York County District Attorney's office and, at a disqualification hearing,
expressed personal feelings for the trial assistant; (3) the trial court mistakenly imposed a
sentence of three years for indictment number 5179/06, when Rodriguez had made a plea deal
reducing the sentence to one year; and (4) the trial court deprived Rodriguez of his Fourteenth
Amendment right to due process by refusing to charge justification as a defense.  (Resp. App.
Vol. 1, Ex. A.)  Rodriguez also raised the following four claims through a *pro se* supplemental
brief: (1) the trial court erred in failing to conduct a probing inquiry of a juror who expressed
dissatisfaction with trial procedure; (2) the trial court erred in failing to instruct the jury on what
evidence was admissible only against Rodriguez's co-defendant; (3) the trial court erred in
failing to give the jury a "vicarious" justification charge; (4) Rodriguez received ineffective
assistance of trial counsel in violation of his Fifth, Sixth, and Fourteenth Amendment rights.
(Resp. App. Vol. 1, Ex. B.)  Rodriguez also adopted all the arguments made by his co-defendant.
(*Id.*)

7

On May 10, 2011, the Appellate Division modified Rodriguez's sentence for Indictment Number 5179/06 for criminal possession of a controlled substance in the third degree from a three year determinate sentence to a one year determinate sentence, but unanimously affirmed all other convictions. *See People v. Rodriguez*, 922 N.Y.S.2d 384 (1st Dep't 2011).

The Appellate Division found that the court properly denied Rodriguez's motion for suppression of evidence because Rodriguez was in possession of marijuana at the time of his arrest, giving the detectives probable cause to arrest him. *Id.* at 501. Furthermore, the court found the arrest lawful because it is permissible for officers to effect a custodial arrest even in instances where it is possible for them to issue a summons. *Id.* The court then found that since the arrest was valid, Rodriguez's search was proper, and thus, any evidence obtained during that search was lawful. Moreover, since Rodriguez fit the description of one of the suspects and there was strong circumstantial evidence linking Rodriguez to one of the other suspects present at the time of his arrest, there was probable cause to arrest Rodriguez for the homicide as well. *Id.*

The Appellate Division rejected Rodriguez's juror misconduct argument on the merits, finding that it had already been properly rejected on his co-defendant's appeal. *Id.* The court found that Rodriguez did not preserve his claim on the justification charge, and alternatively, that the claim had been properly rejected on his co-defendant's appeal. *Id.* at 502. The Appellate Division found that, after proper review of the record, under state and federal standards, Rodriguez received effective assistance from his attorney. *Id.* Finally, the Appellate Division held that Rodriguez's *pro se* contentions were extinguished because he did not bring them at trial, and alternatively, those claims were rejected on the merits. *Id.*

Subsequently, Rodriguez sought a writ of error *coram nobis* with the Appellate Division, claiming that his appellate attorney provided ineffective representation. (Pet'r's Pet. For Writ of

8

Error *Coram Nobis* 1.)  On June 26, 2012, the Appellate Division denied his petition.  Rodriguez

sought leave to appeal to the Court of Appeals, but was denied on October 19, 2012.

**A.    Threshold Issues**

    **1.    Timeliness**

A petitioner must file an application for writ of habeas corpus within one year of his

conviction becoming final. *See* 28 U.S.C. § 2244(d)(1).  A conviction becomes final when the

time to seek direct review in the United States Supreme Court by writ of certiorari expires, that

is, ninety days after the final determination by the state court. *Williams v. Artuz*, 237 F.3d 147,

150 (2d Cir. 2001) (quoting *Ross v. Artuz*, 150 F.3d 97, 98 (2d Cir. 1998)).  Rodriguez was

denied leave to appeal his conviction to the Court of Appeals on September 16, 2011. *People v.*

*Rodriguez*, 17 N.Y.3d 861 (2011).  Rodriguez petitioned the Appellate Division for a writ of

error *coram nobis* on April 5, 2012.  (Resp. Ex. G.)  The Appellate Division denied his petition

on June 26, 2012, (Resp. Ex. I), and the Court of Appeals denied his request for leave to appeal

on October 19, 2012.  (Resp. Ex. L.)  Rodriguez filed his petition for a writ of habeas corpus on

July 2, 2012, six days after the writ of error *coram nobis* was denied.  His petition is therefore

timely filed.

    **2.    Exhaustion**

Pursuant to 28 U.S.C. § 2254(b), as amended by the Antiterrorism and Effective Death

Penalty Act ("AEDPA"), the Court may not grant a petition for habeas corpus unless the

petitioner has exhausted all state judicial remedies.  28 U.S.C. § 2254(b)(1)(A); *see Picard v.*

*Connor*, 404 U.S. 270, 275 (1971); *Dorsey v. Kelley*, 112 F.3d 50, 52 (2d Cir. 1997).  In order to

satisfy substantive exhaustion, a petitioner's claim before the state courts must have been federal

or constitutional in nature.  Although not an exacting standard, a petitioner must inform the state

of "both the factual and the legal premises of the claim [he] asserts in federal court." *Jones v. Vacco*, 126 F.3d 408, 413 (2d Cir. 1997) (quoting *Daye v. Attorney Gen.*, 696 F.2d 186, 191 (2d Cir. 1982) (en banc) (internal quotations omitted)).

> [T]he ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution, include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertions of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Daye v. Attorney Gen.*, 696 F.2d at 194. Procedurally, the petitioner must utilize all avenues of appellate review within the state court system before proceeding to federal court. *See Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994). He must raise a federal claim at each level of the state court system, "present[ing] the substance of his federal claims 'to the highest court of the pertinent state.'" *Id.* (quoting *Pesina v. Johnson*, 913 F.2d 53, 54 (2d Cir. 1990)).

### a.    Patently Tailored Evidence Claim

Rodriguez failed to exhaust his claim that the trial court violated his due process rights when it accepted "patently tailored" testimony presented by the State's witnesses. (Pet. 1.) He failed to raise this claim at trial or on direct appeal. Instead, he brought this claim for the first time on his application for a writ of error *coram nobis*. (Pet'r's Pet. For Writ of Error *Coram Nobis* 1.) The writ of error *coram nobis* is limited to issues involving ineffective assistance of counsel. *See Turner v. Artuz*, 262 F.3d 118, 132 (2d Cir. 2001); *People v. Syville*, 15 N.Y.3d 391, 397-99 (2001). Rodriguez's tailored testimony claim is against the court, not his attorney. Thus, his *coram nobis* petition is not an appropriate way to raise such a claim. Because Rodriguez failed to raise his tailored testimony claim on direct appeal, he is barred from raising

it in state court. *See* CPL § 440.10(2)(c); *Bossett*, 41 F.3d at 829. Therefore, the tailored testimony claim is procedurally barred. *See* 28 U.S.C. § 2254(b)(1)(A).

### b.    Justification Defense Claim

Rodriguez failed to exhaust his justification defense claim. When a petitioner fails to object to an alleged error at trial, the state courts can procedurally bar the petitioner from bringing that as an issue for review on appeal. *See Wainwright v. Sykes*, 433 U.S. 72, 87-91 (1977); *Garvey v. Duncan*, 485 F.3d 709, 711 (2d Cir. 2007). In New York, a defendant must request a jury charge on a defense to preserve for appeal the question of whether the denial of that claim was appropriate. *See People v. LaPetina*, 9 N.Y.3d 854, 855 (2007); *People v. Harrell*, 59 N.Y.2d 620 (1983). Furthermore, in a joint trial, to preserve an issue on appeal, a defendant has to either make his own objections, or to specifically join those of his co-defendant. *See People v. Buckley*, 75 N.Y.2d 843, 846 (1990).

Rodriguez did not ask the court to instruct the jury on the defense of justification to the felony murder charge against him. While Almonte, his co-defendant, did specifically request this charge, Rodriguez failed to join in the request or make a separate request or motion. Therefore, the Appellate Division found that Rodriguez "did not preserve his claim that the court should have charged justification . . ." *Rodriguez*, 922 N.Y.S.2d at 385. As an alternative holding, the Appellate Division rejected the claim on the merits for the reasons stated in rejecting a similar argument made by Almonte. *Id.* Even though the Appellate Division reached an alternative holding on the merits, because the court explicitly invoked a state procedural bar as a separate basis for its decision, Rodriguez's justification defense claim is unexhausted and procedurally barred. *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990).

### c.    Erroneous Admission of Evidence Claim

Rodriguez failed to exhaust his claim that the trial court violated his due process rights by failing to instruct the jury that certain evidence applied only against his co-defendant and not against him. Rodriguez conceded in his *pro se* supplemental brief that he never raised this claim at trial.[3] Therefore, the claim was unpreserved. *See People v. Rodriguez*, 922 N.Y.S.2d 384, 386 (1st Dept 2011); *People v. Rosales*, 28 A.D.3d 231, 232 (1st Dep't 2006). As an alternative holding, the Appellate Division rejected the claim on the merits. *See Rodriguez*, 922 N.Y.S.2d at 386. Accordingly, Rodriguez's claim is unexhausted. *Velasquez*, 898 F.2d at 9. Because he cannot raise the claim in a collateral proceeding, the claim is procedurally barred. *See* CPL § 440.10(2)(c); *Bossett*, 41 F.3d at 829.

### d.    Juror Misconduct Claim

Rodriguez failed to exhaust his claim that the trial court erred in failing to conduct a probing inquiry of a juror who expressed dissatisfaction with trial procedure. Rodriguez failed to object to this issue at trial. (Tr. 206-10.) Therefore, the claim was unpreserved. *See Rodriguez*, 922 N.Y.S.2d at 386; *People v. Hicks*, 6 N.Y.3d 737, 739 (2005). Accordingly, this claim is unexhausted, and, because it cannot now be raised in a collateral proceeding, procedurally barred. *See* CPL § 440.10(2)(c); *Bossett*, 41 F.3d at 829.

### e.    Procedural Bar

Rodriguez's procedurally barred claims may only be reviewed if he can show cause for his failure to exhaust and actual prejudice, or "demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750 (internal citations and

[3]Rodriguez wrote: "Although his counsel technically did not ask for a limiting instruction, this Court should reach this issue in the interest of justice."

quotations omitted).  The Supreme Court has defined cause as a showing that "some objective factor external to the defense impeded counsel's efforts to raise the claim in state court." *McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  A fundamental miscarriage of justice is an "extraordinary [instance] when a constitutional violation probably has caused the conviction of one innocent of the crime." *McCleskey*, 499 U.S. at 494.  Rodriguez has not raised and the record does not show any evidence of cause and prejudice or a fundamental miscarriage of justice.  He was represented on direct appeal and filed his own supplemental brief in his appeal.  With respect to his erroneous admission of evidence claim, Rodriguez claims that he had no standing to raise the claim at trial. Rodriguez relies on *U.S. v. Thomas*, 372 F.3d 1173, 1176 (10th Cir. 2005) and *U.S. v. Phillips*, 382 F.3d 489, 496-97 (5th Cir. 2004) to argue that he had no standing to challenge the seizure of evidence from Almonte's apartment.  This reliance is misplaced.  The issue of whether or not Rodriguez had standing to challenge the search is separate from the issue of whether he was able to request a limiting instruction.  He has not shown cause and prejudice for his failure to request a limiting instruction.

Rodriguez has met the exhaustion requirement on all of his other claims.  He exhausted his Fourth Amendment claim because he raised the claim on direct appeal and the Appellate Division found that the detectives lawfully gathered the evidence against Rodriguez because they had probable cause to search him once he was found in possession of marijuana.  *See Rodriguez*, 922 N.Y.S.2d at 385-86.  Additionally, the Appellate Division found that Rodriguez's speculative assertions of a strip search were unwarranted because the detectives only asked him to take off his shoe, and since they had probable cause arising from the arrest, they were lawfully gathering evidence.  *Id.*  Rodriguez exhausted his ineffective assistance of counsel claim because

he raised it on direct appeal and the Appellate Division found that "defendant received effective assistance of counsel under the state and federal standards." *Id.* At 386. Rodriguez exhausted his claim that the court violated his due process rights by failing to discharge, or at least question, a juror who allegedly evidenced bias against the defense because he raised it on direct appeal and the Appellate Division rejected it on the merits. Finally, Rodriguez raised all three of the preceding claims in his application for leave to appeal to the Court of Appeals. (Resp. App. Vol. II, Ex. E.)

**B.      Merits of Rodriguez's Claims**

      **1.      Standard of Review**

AEDPA constrains a federal habeas court's ability to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. The Act limits issuance of the writ to circumstances in which the state adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *See Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is contrary to federal law if the state court applies "a conclusion opposite to that reached by [the Supreme] Court on a question of law or if [it] decides a case differently than [the Supreme] Court on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. Furthermore, in cases where the state court decision rests on a factual determination, the federal court must find that the "decision … was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

14

###### 2.    Rodriguez's Fourth Amendment Claim

Rodriguez claims that the State violated his Fourth Amendment rights by arresting him without probable cause and by strip-searching him at the police precinct. In a federal habeas petition, a state prisoner cannot claim that the trial court wrongfully admitted evidence against him when the state provided that prisoner with a "full and fair" opportunity to litigate his Fourth Amendment complaints. *Stone v. Powell*, 428 U.S. 465, 482 (1976); *see also Grey v. Hoke*, 933 F.2d 117, 121 (2d. Cir. 1991). A state has presented a prisoner with a "full and fair" opportunity to litigate an issue when the state has provided the litigant with the opportunity to correct the alleged unconstitutional procedures. *See Capellan v. Riley*, 975 F.2d 67, 70-71 (2d Cir. 1992).

Rodriguez argues that his arrest was unlawful because the officers did not possess probable cause and because evidence obtained during this unlawful arrest was admitted at trial. Rodriguez was allowed to object to the evidence at a suppression hearing, at trial, and later, on appeal. The process used by New York State for the adjudication of motions to suppress evidence, described in CPL 710, satisfies Fourth Amendment standards. *Capellan*, 975 F.2d at 70 n.1. Rodriguez, therefore, would have to show an unconscionable breakdown in the underlying process to warrant habeas review of the merits of his Fourth Amendment claims. *Gates v. Henderson*, 568 F.2d 830, 840 (2d Cir. 1977); *Shaw v. Scully*, 654 F. Supp. 859, 863-64 (S.D.N.Y. 1987). An unconscionable breakdown may occur, for example where "no state court had conducted a reasoned method of inquiry into relevant questions of fact and law . . . ." *Shaw*, 654 F. Supp. at 864 (quoting *Cruz v. Alexander*, 477 F. Supp. 516, 523 (S.D.N.Y. 1979)). Rodriguez, however, voiced his Fourth Amendment claims in state court and received full consideration of his claims. He does not allege, and there is no evidence in the record, that there has been a departure from these procedures. Rodriguez's disagreement with the outcome of the

suppression hearing and subsequent determinations is not an unconscionable breakdown of the process requiring review. *See Calderon v. Perez*, No. 10 Civ. 2562 (GBD)(AJP), 2011 WL 293709, at *33 (S.D.N.Y Jan. 28, 2011).

Even if the Court were to consider Rodriguez's claim, it is without merit. An officer may lawfully perform a custodial arrest on a suspect for a violation, other than minor traffic offenses, when the officer's other option was to issue a summons. *See Rodriguez*, 922 N.Y.S.2d at 384. Officers at detention facilities can conduct searches in a reasonable manner. *See Schmerber v. California*, 384 U.S. 757, 771-72 (1966). The Appellate Division found that Rodriguez was visibly in possession of marijuana, thus giving the officer probable cause to investigate a violation of the law that was occurring in his presence. *Rodriguez*, 922 N.Y.S.2d at 384. Additionally, the Appellate Division found that Rodriguez matched the description of a murder suspect, and was surrounded by circumstantial evidence further linking him to the murder. *Id.* The court's finding of probable cause was not contrary to federal law.

Rodriguez also claims that the evidence used against him should not have been allowed into court because the detectives gathered that evidence during an unconstitutional strip search. Rodriguez was asked to remove his shoe, where the drugs where found. (Hr'g at 57.) The removal of a shoe is within the scope of a lawful search incident to arrest. *See United States v. Robinson*, 414 U.S. 218 (1973) (holding that searches pursuant to a lawful arrest are reasonable to ensure safety within the facilities); *Nicholas v. Goord*, 430 F.3d 652, 660 (2d Cir. 2005). Therefore, I recommend that Rodriguez's claim that the State violated his Fourth Amendment rights by arresting him without probable cause and strip-searching him at the police precinct be **DENIED**.

16

### 3.    Rodriguez's Juror Misconduct Claims

Rodriguez argues that the trial court erred in denying his motion to set aside the verdict

where on *voir dire* a juror failed to disclose her past association with the New York County

District Attorney's office and, at a disqualification hearing, expressed personal feelings for the

trial assistant. This claim is without merit. His claim that the trial court erred in failing to

conduct a probing inquiry of a juror who expressed dissatisfaction with trial procedure is barred

from habeas review. Even if the Court were to consider this claim, it also is without merit.

A defendant has the constitutional right to a panel of impartial jurors. *Murphy v.*

*Florida*, 421 U.S. 794, 799 (1975); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). When a defendant

bases his petition for a writ of habeas corpus on a claim that a juror showed bias, the defendant

must show the actual existence of such bias. *Id.* at 800. In criminal cases, the court must

discharge a juror thought to be "grossly unqualified" to meet their civic duty, CPL § 270.35(1),

that is, the juror lacks the mental state of mind to render an impartial judgment, *People v. Buford*,

69 N.Y.2d 290, 298 (1987). When there is evidence that improper conduct by a juror prejudiced

the outcome of the trial, the court may set aside the verdict. CPL § 330.30(2). The unique facts

of each case must be evaluated. *See Buford*, 69 N.Y.2d at 299. On appeal, the reviewing court

must give deference to the lower court's decision. *People v. Prochilo*, 41 N.Y.2d 759, 761

(1977).

First, Rodriguez claims that a juror should have been excused because she had previously

worked for the District Attorney's Office and later disclosed she had a romantic interest in the

prosecutor trying this case. (Resp't Br. On Appellate Review 58- 61). The juror in question had

a summer internship with the Manhattan District Attorney's Office in 1997, and indicated that

she did not think about disclosing this information because it happened a long time ago. (*Id.*)

17

The juror also did not have any business or intimate relationship with any of the witnesses or anyone else that was part of the proceedings. (*Id.*); *see Buford*, 69 N.Y.2d at 298. Moreover, at a post-verdict hearing where the facts unique to this case were evaluated, the juror assured the court that she was impartial and the court agreed. (*Id.*) Indeed, the juror voted to acquit co-defendant Almonte of intentional murder, thus voting against the prosecutor's wishes. (*Id.*) The court's finding that this juror's situation did not require setting aside the verdict was not an unreasonable application of established law.

Rodriguez also claims that the jury was partial because Juror S. said that it was a bad system to not let the jury ask questions. (Tr. 208-09.) In response, the judge stated that the jury could ask for the testimony to be read back to them if they wanted to hear the testimony again. (*Id.* at 210.) After that, Juror S. had no other comments. Juror S.'s question was centered on her concern over not being able to hear all of the testimony presented by the witnesses. (*Id.* at 208-09.) Nothing in the exchange raised suspicions of partiality against Rodriguez. The question referred only to a trial procedure. Similarly, nothing in the exchange raises concerns over the mental state of the jury at the time of trial because it only referred to the ability to hear the witnesses' testimony. As a result, keeping Juror S. on the jury did not violate any constitutional rights.

Rodriguez has not shown that the Appellate Division's decision was "contrary to, or involved an unreasonable application of, clearly established federal law . . ." 28 U.S.C. § 2254(d)(1). Therefore, I recommend that Rodriguez's juror misconduct claims be **DENIED**.

    **4.**    **Rodriguez's Ineffective Assistance of Trial Counsel Claim**

Rodriguez argues that his trial counsel did not provide effective representation because counsel: (1) did not ask for discharge or further inquiry of the allegedly dissatisfied juror; (2) did not ask the court for a justification jury charge; and (3) did not ask the court to limit the introduction of certain evidence to Rodriguez's co-defendant only.   Rodriguez's claim fails on the merits under the AEDPA standard of review.   Under *Strickland*, the Court must determine "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).   This standard has two prongs. *Id.* at 687.   First, the defendant has the burden of showing that "counsel's performance was deficient." *Id.*   Second, the defendant must show that the deficient performance prejudiced the defense. *Id.*   Furthermore, the courts presume that counsel has provided his client with effective assistance. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).   The standard is "highly deferential." *See Pratt v. Greiner*, 306 F.3d 1190, 1193-96 (2d Cir. 2002) (quoting *Strickland*, 466 U.S. at 689).

    **a.**    **There Was No Basis For Counsel to Request Dismissal Of Juror**

Rodriguez claims that his counsel was ineffective in not requesting that the juror who expressed dissatisfaction with the judicial process be dismissed.   However, counsel is not required to raise issues that counsel determines will have no effect. *See Premo v. Moore*, 131 S.Ct. 733, 740 (2011); *Henry v. Poole*, 409 F.3d 48, 62-63 (2d Cir. 2005).   Deference must be given to counsel's decisions because counsel "often has insights borne of past dealings with the same prosecutor or court," and this experience will help him or her assess the merits of the case. *Id.* at 741.   Additionally, counsel must be given ample control to make strategic decisions. *See Strickland*, 466 U.S. at 689; *see Henry*, 409 F.3d at 63.   The exchange that took place between

19

Juror S. and the court did not rise to a level of bias against Rodriguez because it simply

concerned what the jurors should do if they did not hear part of the testimony. *Rodriguez*, 922

N.Y.S.2d at 384.   There is no reasonable basis to infer prejudice on the part of the juror in

question, and therefore any objection would likely have been baseless.   I recommend that this

claim be **DENIED**.

       **b.**       **There Was No Basis For Counsel To Request A Justification Charge**

      Rodriguez claims that his counsel was ineffective in failing to request a justification

charge.   A reasonable strategy is one that under an objective standard would meet a measure of

prevailing professional norms under the circumstances. *Knowles v. Mirzayance*, 556 U.S. 111,

124 (2004); *Strickland*, 466 U.S. at 687-88.   "In considering . . . whether counsel's performance

fell below an objective standard of reasonableness, a court must bear in mind both that counsel

'has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial

testing process' and that counsel must have 'wide lattitude' in making tactical decisions."

*Henry*, 409 F.3d at 63.   Notably, counsel's performance may not be deemed deficient on the

ground that there was "nothing to lose" by pursuing a particular trial strategy. *See Knowles*, 556

U.S. at 122 (2009) ("This Court has never established . . . [a] 'nothing to lose' standard for

evaluating *Strickland* claims").   In this case, Rodriguez's attorney chose not to pursue the

justification charge because the court in co-defendant Almonte's trial had already decided that a

justification charge was meritless because Almonte never faced deadly physical force.   (Tr. 484-

87); *People v. Almonte*, 901 N.Y.S.2d 40, 41-42 (2010).   Because it was likely that the

justification charge would be denied in Rodriguez's case, it was reasonable for Rodriguez's

attorney to choose not to pursue it. *See Rodriguez*, 922 N.Y.S.2d at 384.   Instead, Rodriguez's

counsel tried to distance his client from Almonte by arguing that Rodriguez was not aware that

Almonte possessed a gun at the time of the robbery. (Tr. 492-93.) This is a reasonable strategy because it could help establish an element of the affirmative defense against felony murder. N.Y. PENAL LAW § 125.25 (3)(c). Moreover, when it comes to trial strategy, counsel is given significant deference under the *Strickland* standard. I recommend that this claim be **DENIED.**

### c.      **Counsel's Failure To Request Evidence To Be Limited Is Not Prejudicial**

The Appellate Division held that Rodriguez received effective assistance of counsel under state and federal standards. *Rodriguez*, 922 N.Y.S.2d at 384. To satisfy the prejudice prong of *Strickland*, Rodriguez would have to show that there is a reasonable probability that but for the errors of his counsel, the result of the trial would have been different. *Rosario v. Ecole*, 601 F.3d 118, 123 (2d Cir. 2010). The ultimate question is whether counsel's error was so egregious that it affected the fairness of the judicial process. *People v. Benevento*, 91 N.Y.2d 708, 714 (1998). This is assessed by looking at the "totality of the circumstances and the law at the time of the case and asking whether there was meaningful representation." *Rosario*, 601 F.3d at 124 (internal quotations omitted). Rodriguez's counsel argued for the suppression of evidence that the court ultimately decided to admit. (Hr'g 230.) Counsel did not commit an egregious error that affected the outcome of the judicial process. Rather, counsel adequately argued against admission of the evidence and was unsuccessful. It was a determination by the court that allowed the introduction of the evidence. Furthermore, were counsel to have argued for a limiting evidence instruction, such an instruction would not have affected the outcome of the judicial process as the evidence in question was only of marginal significance; it was merely corroborative of the testimony provided by Guzman. Therefore, because there is no evidence of lack of meaningful representation, I recommend that this claim be **DENIED.**

**5.     Rodriguez's Justification Defense Claim**

Even if the Court were to review the Appellate Division's alternative holding that

Rodriguez's justification defense was without merit "for the reasons . . stated in rejecting a

similar argument made by [Almonte]," *Rodriguez*, 922 N.Y.S.2d at 386, the decision should be

upheld under AEDPA.  In Rodriguez's co-defendant's appeal, the Appellate Division found that

the court properly declined to charge justification because: 1) Almonte had testified that by the

time the gun discharged, "he had already acquired it from [Peralta], leaving [Peralta] unarmed;"

and 2) "the absence of a justification charge was harmless" because Almonte was acquitted of

intentional murder and convicted of felony murder, and "it is clear, under the present facts, that

the jury could not have reasonably found that [Almonte] killed the deceased in the course of a

robbery, but was nevertheless somehow justified within the meaning of Penal Law § 35.15."

*People v. Almonte*, 73 A.D.3d 531, 532 (2010).  Rodriguez was charged with felony murder, not

intentional murder.  (Tr. at 572.)  Under N.Y. PENAL LAW § 35.15 (1)(b), a person may not use

physical force in defense if they are "the initial aggressor; except that in such case the use of

physical force is nevertheless justifiable if the actor has withdrawn from the encounter and

effectively communicated such withdrawal to such other person but the latter persists in

continuing the incident by the use or threatened imminent use of unlawful physical force . . . ."

N.Y. PENAL LAW § 35.15 (1)(b).  Accordingly, the jury could not have reasonably found that

Almonte killed Peralta in the course of a robbery, but was justified in doing so.  Therefore, The

Court finds that the Appellate Division's alternative holding on the merits did not "result[] in a

decision that was contrary to, or involved an unreasonable application of, clearly established

federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

I recommend that Rodriguez's justification defense claim be **DENIED.**

### 6.      Rodriguez's Erroneous Admission of Evidence Claim

Even if the Court were to consider Rodriguez's erroneous admission of evidence claim,

the claim is without merit.  In order to challenge a ruling on admissibility of evidence, the habeas

petitioner must establish that the evidence when "viewed objectively in light of the record"

would have "provide[d] the basis for conviction." *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir.

1985).  In New York, relevant evidence is admissible unless it violates an exclusionary rule.

*People v. Scarola*, 71 N.Y.2d 769, 777 (1988).  Evidence is relevant when it will help prove the

"existence of any material fact[.]"  *Id.*

Here, the police found Dennis Almonte's ID, mail addressed to Christian and Raquel

Almonte, a box of ammunition, a "couple" of loose nine millimeter rounds, and drug

paraphernalia at Almonte's aunt's apartment at 2400 Second Avenue in Manhattan.  (Tr. 307-

22.)  This evidence gathered at the apartment helped corroborate Guzman's testimony that

Rodriguez, the Almontes, and Guzman went to the Almontes aunt's apartment to divide the

stolen cocaine.  Because the evidence only helped corroborate Guzman's testimony, which

Rodriguez did not object to at trial, it did not provide the basis of conviction, or "remove a

reasonable doubt that would have existed on the record without it."  *See Collins*, 755 F.2d at 19.

I recommend that Rodriguez's claim that the trial court violated his due process rights by failing

to instruct the jury that certain evidence applied only against his co-defendant and not against

him be **DENIED.**

### 7.      Rodriguez's Patently Tailored Evidence Claim

Even if the Court were to consider Rodriguez's claim that the trial court violated his due

process rights when it accepted "patently tailored" testimony presented by the State's witnesses,

the claim is without merit.  "A conviction obtained by the knowing use of perjured testimony is

fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976). A conviction must be set aside if "(1) the prosecution actually knew of [the] false testimony, and (2) there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Drake v. Portuondo*, 553 F.3d 230, 241 (2d Cir. 2009).

Rodriguez argues that Detective Vieni falsely testified against him at his trial based on alleged discrepancies between Vieni's suppression hearing testimony and his trial testimony. Specifically, Rodriguez asserts that: 1) Vieni testified at the pretrial suppression hearing that he smelled marijuana in the lobby of 3210 Perry Avenue, but at trial testified to initially smelling marijuana between the third and fourth floor of the building; 2) Vieni's testimony at both the hearing and trial that he saw Rodriguez with a marijuana blunt was not supported by the testimony of the other detectives; 3) none of the detectives recovered a blunt from the scene; and 4) none of the detectives testified that Rodriguez appeared to be under the influence of marijuana. (Pet. at 5-6.) These assertions are not entirely accurate. For example, Vieni's testimony that he saw Rodriguez with a blunt is supported by Detective Bonas's testimony that he saw the residue of a blunt on the floor. (Hrg 86-87.) To the extent that the other discrepancies exist, they are trivial, and not material because the lawfulness of Rodriguez's arrest was not an issue at trial. On the basis of these facts, Rodriguez has not shown that the prosecution knowingly presented false testimony, nor that such false testimony could have affected the judgment of the jury. *Drake v. Portuondo*, 553 F.3d 230, 241 (2d Cir. 2009).

Rodriguez alleges that the State admitted to the use of "patently tailored" testimony by failing to deny those allegations on a Fair Notice/Demand letter he sent to the District Attorney, thus tacitly admitting all allegations in that letter. He cites *People v. Ross*, 414 N.Y.S.2d 929 (3d

24

Dept. 1979) and *People v. Egan*, 434 N.Y.S.2d 55 (4th Dept. 1980) in support of this claim. Neither case is on point.  In *Ross*, the issue concerned in-person questioning of witnesses during trial and does not apply here.  *Egan* relates to admissible hearsay in instances when there was an excited utterance of admission of guilt, also not applicable here.  I recommend that Rodriguez's patently tailored evidence claim be **DENIED.**

### IV.    CONCLUSION

For the reasons set forth above, I recommend that Rodriguez's Petition for a Writ of *Habeas Corpus* be **DENIED.**  Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Loretta A. Preska, 500 Pearl Street, Room 2220, and to the chambers of the undersigned, 500 Pearl Street, Room 1970.  Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals.  *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); Fed. R. Civ. P. 72, 6(a), 6(d).

**DATED: September 12, 2014**
**New York, New York**

Respectfully Submitted,

The Honorable Ronald L. Ellis
United States Magistrate Judge

25